## IN THE UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KRISTIN BAUSCH | Case No. |
| Plaintiff, | |
| vs | **COMPLAINT** |
| JACOB FROST, JASON HANSON, EMILY WILSON, JANE JACOBS, LISA BINA, NANCY HAACK, JENNIFER COOKE, CRISCILDA CHAIREZ in their official and individual Capacities | **JURY TRIAL DEMANDED** |
| Defendant(s) | 23  CV  061  JDP |

### INTRODUCTION

1. Plaintiff, Kristin Bausch herein provides the Court this verified COMPLAINT under the 1st, 4th, 5th, 6th, 7th, 8th, and 14th Amendments; and further under 15 U.S.C. §645; 18 U.S.C. §241; 18 U.S.C. §242; 18 U.S.C. §245; 31 U.S.C. §3720D; and 42 U.S.C. §1983.

2. This is an action for relief for civil rights violations by Defendants to the Plaintiff Kristin Bausch. Plaintiff has the fundamental rights from the deprivation of life, liberty, and property without affording due process and equal protection of the laws.

3. The first and underlying violation is that Plaintiff was never involved in a due process which was known as a Turner hearing.

4. The new federal rule amends 45 CFR §303.6 to require all state enforcement programs to develop guidelines for the use of civil contempt as an enforcement mechanism in child support cases. The new rule focuses on the US Supreme Court decision in Turner v.

1

Rogers as justification for clarifying the need to better protect the due process rights of obligors in contempt proceedings.

5.  Defendants, conspired to subject Plaintiff to the unlawful employment practice of forcing her, as a condition of her employment, to participate in and enforce a company requirement work-performance contract through wage garnishments in exchange for her labor, as a means of enrichment for Defendants, and repayment of two [2] separate accounts of debt alleged by Defendants without affording due process and equal protection of the laws. ["Company Requirement"] attached exhibit herein a true copy of the contract which further proves violations of due process.

6.  Defendants' requirement caused Plaintiff significant distress, anxiety, and financial injury including wage garnishment and loss of income.

7.  Plaintiff requests the Court hold her "to less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972).

8.  However, the Eighth Circuit Court of Appeals has very recently cautioned that "subject matter jurisdiction should not be used to dismiss a case containing even a remotely plausible federal claim if the parties and the courts have already made [a] vast expenditure of resources." See, Pioneer Hi-Bred, 35 F.3d at 1242.

9.  Thus, in the interest of judicial economy and in light of the investment of resources of the parties here, the court will consider whether Plaintiff's complaint can be construed as an inartful attempt to assert plausible federal claims through §1983 of violation of federal constitutional rights to due process and equal protection under the Fourteenth Amendment. . See, Carol A. MUMMELTHIE, Plaintiff vs. CITY OF MASON CITY,

IOWA, and Alberta Carlene Davis, Defendants; No. C 93-3030; United States District Court, N.D. Iowa, Central Division; January 9, 1995;873 F. Supp. 1293.

10. The case arises out of the excessive use of force used in detaining the Plaintiff at the and false arrest at Hamilton County Court House, Court Room, 3C Title IVD, 2x . And Hamilton County Superior Court Room ,1x

11. Subsequently, the Plaintiff did not get a Turner hearing of which is a due process violation.

12. The new federal rule amends 45 CFR 303.6 to require all state enforcement programs to develop guidelines for the use of civil contempt as an enforcement mechanism in child support cases. The Comment to the new rule focuses on the US Supreme Court decision in Turner v. Rogers as justification for clarifying the need to better protect the due process rights of obligors in contempt proceedings. The Comment states:

> "As the U.S. Supreme Court stated in Turner, a noncustodial parent's ability to pay constitutes the critical question in a civil contempt case. … Contempt is an important tool for collection of child support when used in appropriate cases where evidence exists that the noncustodial parent has the income and assets to pay the ordered monthly support obligations, but willfully fails to do so, and the purge amounts or conditions are within the noncustodial parent's ability to pay or meet. The Turner opinion provides the child support program with a guide for conducting fundamentally fair and constitutionally acceptable proceedings."

13. On October 25, 2017 and Hamilton County Court House , Court Room 3C Title IVD October 26,2020 . And Hamilton County Superior Court Room 1 on On February 10, 2021.

14. Plaintiff seeks compensatory and punitive damages arising from the actions of the Defendants to discriminate against her because of her gender pursuant to 42 U.S.C. 1983.

15. Plaintiff seeks damages and monetary relief from the STATE OF WISCONSIN, (hereinafter, "STATE") and Defendants named in the above caption, jointly, severally and individually, for illegal acts that have been committed under color of law, for the purposes of depriving Plaintiff of basic civil rights secured by the Constitution of the United States and the anti-discrimination statues and laws of the Constitution of the STATE.

16. Plaintiff found herself facing imminent threats of false accusation and malicious prosecution by the Defendants Sheriffs.

17. As result of the Defendants' ensuing threats and allowing the admission of falsified court papers into evidence and fabricated incidents, Plaintiff seeks constitutional protection and monetary relief from Defendants.

18. As a direct and proximate result of Defendants' policies, practice and /or custom within the courtroom of the STATE Court rooms, hundreds of innocent Black and Hispanic mothers, including Plaintiff, have been subjected to unconstitutional false arrests and financial punishment.

19. Rooker-Feldman is not a jurisdictional giant. It is a limited doctrine that applies only when litigants try to appeal state court losses in the lower federal courts. Rooker-Feldman does not apply to the claims herein matter. See, Behr vs James Campbell, Palm Beach County School District, United States Court of Appeals No.18-12842 (11th Circuit).

20. Plaintiff is not attempting to overturn any State decisions and orders herein.

21. At the start of the trial, all Defendants shall show their time card that reflects the payments from the Federal government.

22. Settled Matter of the Court - Child Support Tribunal Is Not an Article III Court.

23. The Child Support Enforcement Department (CSED)process is a simulated judicial construct to fool the public into thinking that the program is a real judicial process.

24. The District Court contends that the statutes in question violate the separation of powers doctrine of the Montana Constitution by giving CSED "judicial power" which is `expressly reserved to the judiciary by the constitution. The District Court argues that because "judicial power" includes the authority to make binding orders and to carry them into effect, CSED's statutory authority to modify a child support order, file it with the district court, and then enforce the order as a district court judgment, violates the constitution.   See, SEUBERT v. Montana , Supreme Court of Montana, No. 98-324.Decided: August 31, 2000.

25. Foundation of the Fraud In Family Court and the State

      Bouquety vs. Bouquety

      No. 3D05-434. June 28, 2006.

      Appeal from the Circuit Court, Miami-Dade County, Eugene J. Fierro, J.

      Clyne Self, and Reginald J. Clyne, Miami, for appellant.

      Philipp v Stahl, 344 N.J. Super. 262, 781 A.2d 1065 (2001)

      Oct. 3, 2001 · New Jersey Superior Court, Appellate Division

      UIFSA was adopted by all fifty states at the instigation of Congress which sought to eliminate the problem of conflicting •support orders by different states, each of whom claimed jurisdiction in a support dispute. Thus, the provisions of the

Georgia statute are virtually identical to those of the New Jersey Act. See GACode Aim. § 19-11-110 to 118.

The basic concept of UIFSA is relatively simple, although its format may contribute to some lack of clarity by employing what would seem to be self-defining terms, such as "continuing exclusive jurisdiction," to mean something other than what their normal usage would suggest. Indeed, it is the seemingly anomalous concept of two states having such "continuing exclusive jurisdiction" over the same matter which lies at the root of the jurisdictional dispute in the case.

The jurisdictional provisions of UIFSA which govern the case are set out in four subsections of N.J.S.A 2A:4-30.72. Subsection a provides that, unless all parties agree otherwise, if a court of the state has issued "a support order," then that court has "continuing, exclusive jurisdiction over a child support order" so long as either the obligor or obligee under the order, or "the child for whose benefit the support order is issued" continues to reside in the state. Subsection b, however, provides that a court of the state which has issued a child support order "may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to the act or a law substantially similar to the act."

26. Child Support Title IV-D Program

27. The Child Support Enforcement (CSE) program was enacted into law on January 4, 1975 (P.L. 93-647). When the program was first established, its goals were to reimburse the states and the federal government for the welfare payments they provided families, and to help other families remain self-sufficient and stay off welfare by obtaining consistent and ongoing child support payments from the noncustodial parent. Over time, the CSE

program has evolved from a "welfare cost-recovery" program into a "family-first" program that seeks to enhance the well-being of families by making child support a more reliable source of income.

28. Upon information and belief the Office of the Governor of the State of Wisconsin entered into a cooperative agreement for federal financing and full participation within Section 666.

45 CFR §301.12 Submittal of Title IV-D State plan for Governor's review.

29. The State plan must be submitted to the State Governor for his review and comments, and the State plan must provide that the Governor will be given opportunity to review State plan amendments and long-range program planning projections or other periodic reports thereon. The requirement does not apply to periodic statistical or budget and other fiscal reports. Under the requirement, the Office of the Governor will be afforded a specified period in which to review the material. Any comments made will be transmitted to the Office with the documents.(Approved by the Office of Management and Budget. Subsequently, criminal nonsupport statutes exist,Wis. Stat. § 948.22, 9 months, $10,000;§ 939.51 and § 939.50, 3.5 years, $10,000.

## JURISDICTION AND VENUE

30. This Court has jurisdiction over the subject matter and parties under 28 U.S.C. § 1331, as the case involves questions of federal law. The Court has jurisdiction under 28 U.S.C. § 1332 because there is a diversity of citizenship. The Court also has jurisdiction under 28 U.S.C. § 1343 because Plaintiff seeks damages for violation of her civil rights.

31. Venue is proper under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as Defendants
    are subject to the personal jurisdiction of the Court because Defendants maintain facilities
    and business operations in their District, and all of the events giving rise to the action
    occurred in the District.

32. Even where the Plaintiff did not raise any jurisdictional issues[ t]his court is obligated
    to raise such jurisdictional issues if it perceives **ANY**. See, White v. Nix, 43 F.3d 374
    (8th Cir.1994) (quoting Lewis v. United States Farmers Home Admin., 992 F.2d 767,
    771 (8th Cir. 1993)).

## **NATURE OF THIS ACTION**

33. Plaintiff brings the an action under the 1st, 4th, 5th, 6th, 7th, 8th, and 14th Amendments;
    15 U.S.C. § 645; 18 U.S.C. § 241; 18 U.S.C. § 242; 18 U.S.C. § 245; 31 U.S.C. § 3720D;
    Abusive Process; and 42 U.S.C. § 1983.

34. Plaintiff seeks compensatory damages, punitive damages, and reasonable litigation
    expenses as remedies for Defendants' violations of her rights pursuant to the constitutions
    of the United States and the STATE  of Wisconsin and any common law rights.

## **PARTIES**

35. Plaintiff, Kristin Bausch at all times mentioned in the Complaint, resides in the State of
    Wisconsin

36. Defendant Jacob Frost was at all times relevant herein, acting under color of state law as
    a judge, officers, employees and agent of Dane County Court. Who is a judge of Dane
    County Court.

37. Defendant Jason Hanson was at all times relevant herein, acting under color of state law as a commissioner, officers, employees and agent of Dane County Court. Who is a commissioner of Dane County Court.

38. Defendant Emily Wilson was at all times relevant herein, acting under color of state law as a guardian ad litem, officers, employees and agent of Dane County. Who is a guardian ad litem of Dane County.

39. Defendant Nancy Haack was at all times relevant herein, acting under color of state law as a child support director, officers, employees and agent of Dane County. Who is a child support Director of Dane County.

40. Defendant Lisa Bina was at all times relevant herein, acting under color of state law as a child support attorney, officers, employees and agent of Dane County. Who is a child support operation Director of Dane County.

41. Defendant Jennifer Cooke was at all times relevant herein, acting under color of state law as a child support attorney, officers, employees and agent of Dane County. Who is a Director of Family Court of Dane County.

42. Defendant Criscilda Chairez was at all times relevant herein, acting under color of state law as a child support investigator, officers, employees and agent of Dane County. Who is a child support investigator of Dane County.

43. Defendant Jane Jacobs was at all times relevant herein, acting under color of state law as an attorney, officers, employees and agent of Dane County court. Who is a child support attorney of Dane County Court.

44. Upon information and belief, Defendants are at all times relevant herein, a Wisconsin corporation with its principal place of business in Madison, Wisconsin.

45. Upon information and belief, Defendants are at all times relevant herein, citizens of the State of Wisconsin.

46. On or around July 26, 2022, Plaintiff submitted affidavits with instructions to the court for Hanson, Frost, Haack, Bina, Jacobs, and Wilson. The affidavit contained important information and details regarding Plaintiff releasing counsel, Plaintiff position, status and nature of action.

47. It appeared that Hanson, Frost, Haack, Bina, Jacobs, and Wilson received the affidavit and notice. However, Hanson, Frost, Haack, Bina, Jacobs, and Wilson failed to acknowledge and respond to Plaintiff affidavits.

48. As a result of Frost, Hanson, Haack, Bina, Jacobs, and Wilson not acknowledging or responding to Plaintiff affidavits. Plaintiff was injured financially, suffered loss of income which caused Plaintiff mental anguish, sleepless nights, nutritional and physical health disturbances, emotional and traumatic stress, and violation of Plaintiff's constitutional rights as a result of the defendant(s) conduct.

49. On or around July 27, 2022, Plaintiff submitted affidavits and noticed the court for Frost, Hanson, Haack, Bina, Jacobs, and Wilson. The affidavits contained very important information regarding Plaintiff status, position and nature of action.

50. It appeared that Frost, Hanson, Wilson, Haack, Bina, and Jacobs received the Affidavits. Frost, Hanson, Haack, Bina, Jacobs, and Wilson failed to respond to the affidavits.

51. As a result of Hanson, Frost, Haack, Bina, Jacobs, and Wilson failing to respond to Plaintiff affidavits, Plaintiff was injured financially which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health

disturbances, and violation of Plaintiff constitutional rights as a result of defendant(s) conduct.

52. On or around July 29, 2022, Plaintiff submitted affidavits and noticed the court for Hanson, Frost, Haack, Bina, Jacobs, and Wilson. The affidavits contained important information Plaintiff finances, position and intent.

53. It appeared that Hanson, Frost, Haack, Bina, Jacobs, and Wilson received the affidavits for court. Hanson, Frost, Haack, Bina, Jacobs, and Wilson failed to acknowledge and respond to Plaintiff affidavits

54. As a result of Hanson, Frost, Haack, Bina, Jacobs, and Wilson failing to acknowledge and respond to Plaintiff affidavits. Plaintiff was injured financially, including loss of income, children separation anxiety which caused Plaintiff mental anguish, anxiety, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

55. On or around July 29, 2022, Hanson filed a document, however Hanson, Frost, Haack, Bina, Jacobs, and Wilson failed to acknowledge Plaintiff affidavits that were previously submitted and noticed the court. The affidavits contained very important information regarding Plaintiff status, position and nature of action.

56. It appeared that all parties received Plaintiff affidavits and were noticed. However, Hanson, Frost, Haack, Bina, Jacobs, and Wilson did not acknowledge or respond to Plaintiff submitted affidavits regarding the nature of action.

57. As a result of Hanson, Frost, Haack, Bina, Jacobs, and Wilson failing to acknowledge and respond to Plaintiff affidavits. Plaintiff was injured financially, including loss of income, children separation anxiety, which caused Plaintiff mental anguish, sleepless nights,

emotional and traumatic stress, nutritional and physical health disturbances, and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

58. On or around August 5, 2022, Plaintiff submitted affidavits to court for Hanson, Frost, Haack, Bina, Jacobs, and Wilson. Within each of the affidavits contained information regarding the nature of action, position, intent and income which was $0, anything used more than that would violate Plaintiff right.

59. It appeared that Hanson, Frost, Haack, Bina, Jacobs, and Wilson received the documents and affidavits.

60. Unfortunately Hanson, Frost, Haack, Bina, Jacobs, and Wilson failed to acknowledge and respond to the affidavits.

61. As a result of Hanson, Frost, Haack, Bina, Jacobs, and Wilson not taking any action and responding to Plaintiff's affidavits. Plaintiff was injured financially and suffered loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, even Plaintiff children now suffer from separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

62. On or around August 26, 2022, Frost filed a document to court, however Hanson, Frost, Haack, Bina, Jacobs, and Wilson did not respond to Plaintiff's affidavits. Within each of the affidavits contained information regarding the nature of action, position and intent.

63. It appeared that all parties were noticed by Plaintiff and Frost threatened Plaintiff. while Hanson, Frost, Haack, Bina, Jacobs, and Wilson still have not responded to the requested documentation.

64. As a result of Frost failing to acknowledge and respond to Plaintiff affidavits. Plaintiff was injured financially and suffered loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, even Plaintiff children now suffer from separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

65. On or around August 30, 2022, Plaintiff submitted an affidavit and noticed the court for Hanson, Frost, Haack, Bina, Jacobs, and Wilson. Within each of the affidavits contained information regarding the nature of action, position, intent and income which was $0, anything used more than that would violate Plaintiff right.

66. It appeared that Hanson, Frost, Haack, Bina, Jacobs, and Wilson received the affidavit. however Hanson, Frost, Haack, Bina, Jacobs, and Wilson failed to respond to Plaintiff affidavits.

67. As a result of Hanson, Frost, Haack, Bina, Jacobs, and Wilson not acknowledging or responding to Plaintiff affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

68. On or around September 6, 2022, Plaintiff appeared in court with Hanson and attorney Schweiger. Prior to court Plaintiff filed affidavits with important instructions, position and status.

69. It appeared that Frost, Hanson, Wilson, Cunningham, Schweiger, and Krimmer were in attendance. It appeared that all parties acknowledged and received Plaintiff affidavits.

Hanson, Frost, Haack, Bina, Jacobs, and Wilson failed to acknowledge and respond to Plaintiff affidavits.

70. As a result of Hanson, Frost, Haack, Bina, Jacobs, and Wilson failing to acknowledge and respond to Plaintiff affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

71. On or around September 13, 2022, Emily Cunningham submitted forms into court for Haack, Bina and the child support agency. Plaintiff submitted affidavits for Frost, Haack, Bina, containing important information pertaining regarding Plaintiff position and income which was $0.

72. It appeared Frost, Haack, Bina received affidavits. Unfortunately Frost, Haack, Bina failed to acknowledge and respond to Plaintiff affidavits.

73. As a result of Frost, Haack, Bina failing to acknowledge and respond to Plaintiff affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

74. On or around September 22, 2022, Cooke filed a form into court. Plaintiff submitted an affidavit to Hanson, Frost, Haack, Bina, Jacobs, Cooke and Wilson. Plaintiff filed an affidavit with important instructions, position, status and income which was $0, anything used more than that would violate Plaintiff right.

75. It appeared that Hanson, Frost, Haack, Bina, Jacobs, Cooke and Wilson received affidavits from Plaintiff. Hanson, Frost, Haack, Bina, Jacobs, Cooke and Wilson. failed to respond to the affidavits.

76. As a result of Hanson, Frost, Haack, Bina, Jacobs, Cooke and Wilson failing to respond to Plaintiff affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

77. On/around October 14th, 2022 Chairez and the child support agency sent Plaintiff employer a form to garnish payments on the average amount of $238 every twice a month from Plaintiff. Plaintiff submitted affidavits into court for Chairez.

78. Chairez appeared to receive the affidavit. Plaintiff was not given an opportunity to be heard and challenge the garnishment with a judicial officer.

79. As a direct result Plaintiff was unable to meet Plaintiff basic living expenses such as food, clothing, medical bills, and shelter. This has caused Plaintiff financial loss, emotional and traumatic stress, mental anguish, nutritional and physical health disturbances, and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

80. On or around November 2, 2022, Plaintiff submitted affidavits and noticed the court for Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson. Within each of the affidavits contained important information regarding the nature of action, position and status.

81. It appeared that Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson received the affidavits. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failed to respond to the documents.

82. As a result of Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failing to respond to Plaintiff affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

83. On or around November 3, 2022, Plaintiff appeared in court with Hanson, Cunningham, Wilson. Prior to court Plaintiff submitted affidavits which were filed for Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson. Within the affidavits contained important information regarding the nature of cause, Plaintiff position and finances.

84. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson did not acknowledge or respond to Plaintiff affidavits. Instead, Frost threatened the Plaintiff.

85. As a result of Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failing to acknowledge and respond to Plaintiff affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

86. On or around November 3, 2022, Plaintiff sent a noticed to Attorney General, Josh Kaul.

87. It appeared that Kaul received the Noticed. Kaul has not responded thus far.

88. As a result of Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson not addressing and taking action to affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

89. On or around November 15, 2022 Frost filed a document. Plaintiff submitted an affidavit to Hanson, Frost, Haack, Bina, Jacobs, Cooke and Wilson. Plaintiff filed an affidavit with important instructions, position, status and income which was $0, anything used more than that would violate Plaintiff right.

90. It appeared that all parties were noticed and received Plaintiff affidavits. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson still have not responded to Plaintiff noticed and affidavits.

91. As a result of Frost filing a document and Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failing to acknowledge Plaintiff affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

92. On or around November 28, 2022, Plaintiff submitted affidavits to Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson. Within the affidavits contained important information regarding Plaintiff position, nature of action and status.

93. It appeared that Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson received Plaintiff affidavits. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failed to respond to Plaintiff affidavits.

94. As a result of Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failing to respond to Plaintiff affidavits.

95. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

96. On or around November 29, 2022, Frost submitted a document. Plaintiff submitted an affidavit for Frost.

97. It appeared that Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson received Plaintiff affidavits. However, Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failed to acknowledge and respond to Plaintiff affidavits and noticed the court for Hanson and Frost.

98. As a direct result of Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failing to respond to Plaintiff affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

99. On or around December 13, 2022, Wilson filed a form. Plaintiff submitted an affidavit for Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson

100. It appeared that Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson received the Affidavits. However, failed to acknowledge Plaintiff's affidavits and noticed the court for Frost.

101. As a result of Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failing to acknowledge and respond to Plaintiff affidavits.  Plaintiff was unable to meet Plaintiff's basic living expenses such as food, clothing, bills, and shelter. This has caused Plaintiff financial loss, emotional and traumatic stress, mental anguish, nutritional and physical health disturbances, and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

102. On or around December 13, 2022, Frost filed a document. Plaintiff submitted an affidavit for Frost.

103. It appeared that Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson received the Affidavits. However, failed to acknowledge Plaintiff's affidavits and noticed the court for Frost.

104. As a result of Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failing to acknowledge and respond to Plaintiff affidavits. Plaintiff was unable to meet Plaintiff's basic living expenses such as food, clothing, bills, and shelter. This has caused Plaintiff financial loss, emotional and traumatic stress, mental anguish, nutritional and physical health disturbances, and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

105. On or around December 15, 2022, Plaintiff submitted affidavits and noticed to the court for Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson. Within the

affidavits contained important information regarding the nature of the action, status and position.

106. It appeared that Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson received the affidavits and notice. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failed to respond to the documents.

107. As a result of Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failing to acknowledge and respond to Plaintiff affidavits.Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

108. On or around December 16, 2022, Frost filed a document in court. Plaintiff submitted an affidavit for Frost.

109. It appeared that Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failed to acknowledge and respond to Plaintiff's affidavits and noticed the court for Frost.

110. As a result of Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failing to acknowledge Plaintiff affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

111. On or around January 17, 2023, Plaintiff submitted affidavits for Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson. Within the affidavits contained important information to finalize the case.

112. It appeared that Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson received the affidavits. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson and parties failed to respond to Plaintiff affidavits.

113. As a result of Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson and parties failing to acknowledge and respond to Plaintiff affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

114. On or around January 24, 2023 Plaintiff sent affidavits for Bina and Haack. The affidavits contained important information regarding plaintiff position and status.

115. It appeared that Bina, Haack, Evers, Kaul received the affidavits. Bina and Haack have failed to respond to Plaintiff affidavits.

116. As a result of Bina and Haack failing to acknowledge and respond to Plaintiff affidavits. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

117. On or around January 24, 2023, Plaintiff submitted affidavits to court for Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson. Within the affidavits contained important information to finalize the case.

118. It appeared that Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson received the affidavits. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failed to acknowledge and respond to Plaintiff affidavits and pleadings.

119. As a result of Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson failing to acknowledge and respond to Plaintiff affidavits and pleadings. Plaintiff was injured financially, suffered a loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

120. During the course of family litigation, Plaintiff paperwork was denied any remedy including affidavits of which cannot be denied by law.

121. Upon information and belief an affidavit if not contested in a timely manner is considered undisputed facts as a matter of law.

122. Upon information and belief Plaintiff has submitted the only sworn testimony which has not been answered in family court.

123. Upon information and belief affidavits are accepted as truth for all litigation and therefore any denial is a due process error under the 14th amendment.

124. Upon information and belief the Title IV-D contract describes that the commissioners, judges, prosecutors, attorney generals and county have a financial incentive contract

outside of their normal judicial function.

**FAMILY COURT COMMISSIONER (FCC) DUTIES  (Required for reimbursement of services.)**

Unless otherwise agreed, process all FA case IWs, and all PA case IWs if ordered in court, on IV-D cases including changes and terminations of assignments unless otherwise agreed by the CSA, irrespective of the presence of CSA personnel at the hearing.

Order income withholding in every case in which a support order is entered or make appropriate finding.  Order all payments for child support to be made through the WISCTF.

Whenever an order for support is issued which deviates from the percentage standard, the FCC will include in the order and state on the record:
- The reason that use of the percent standard would be unfair to the child or the party,
- The amount of support that would have been required under the percent standard,
- How the order deviates from the standard,
- Reasons for the amount of modification, and
- The basis for the modification.

Whenever a child support order is entered or revised in a IV-D case, express the terms of said order as a fixed dollar amount, rather than as a percentage of income.

125. Upon information and belief the defendants operate with dual capacity.

126. Upon information and belief the Title IV-D contract also describes the defendant(s) receiving incentives for garnishing the maximum amount from the Plaintiff, as a direct result the STATE defendants receive incentives payments in conjunction from federal

funding.

DocuSign Envelope ID: 5B1242AD-16AD-413B-A8C9-1036IF59CA01

**Funding Information for Grants managed thru SPARC:**

| Contractor: Dane County | | STAR Supplier ID: 0000071906 |
|---|---|---|
| **Commodity or Service Description** | **SPARC Contract Code Number** | **Award Amount** |
| **State GPR Allocation** | | $866,565.00 |
| Jan – June Funding Amount | 7502 | $433,282.00 |
| July – Dec Funding Estimate | | $433,283.00 |
| **Federal Match on State GPR**** | 7477 | $1,682,157.00 |
| **Federal Performance Incentive for FFY20** | 7620 | $1,061,879.00 |
| **Medical Support GPR** | 7606 | $15,697.00 |
| **Federal Match on Medical Support GPR **** | 7477 | $30,471.00 |
| | **TOTAL PROJECT AMOUNT** | $3,656,769.00 |

**The contact amounts listed for line 7477 are estimated amounts only based upon the State GPR funding provided. The amounts do not represent the total funding available through the federal IV-D program and the corresponding federal matching rate of 66% for all allowable child support program costs. The contract amount for Line 7477 will show as uncapped in SPARC.

All Funding allocations are subject to Federal and State budgetary changes.

2

127. As a direct result of the Defendants, Plaintiff was harmed and has suffered damages which include loss of income and financial hardship as a result.

128. As a direct result of the Defendants being as contractors and not acknowledging Plaintiff affidavits.

129. Plaintiff has suffered mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights as a result of defendant(s) conduct.

## Judicial Immunity is Lost

130. Upon information and belief all defendants are independent contractors with duties based on performance.

131. Defendants are not judicial officers.

132. As a matter of full disclosure, conflict of interest existed between the defendant parties in the above as result of the Title IV-D contract.

133. Below illustration references exhibit Dane County Cross governmental/Title IV-D contract Pg 5, Section D. INDEPENDENT CAPACITY OF CONTRACTOR:

> **D. INDEPENDENT CAPACITY OF CONTRACTOR**
> The parties hereto agree that the contractor, its officers, agents, and employees, in the performance of this agreement shall act in the capacity of an independent contractor and not as an officer, employee, or agent of the state. The contractor agrees to take such steps as may be necessary to ensure that each subcontractor of the contractor will be deemed to be an independent contractor and will not be considered or permitted to be an agent, servant, joint venturer, or partner of the state.

134. Based on the above Exhibit contract, the defendant parties are independent contractors and not state employees.

> **STANDARD COOPERATIVE AGREEMENT**
>
> THIS AGREEMENT is entered into between the Dane County Child Support Agency (Name of County) County Board of Supervisors or the Child Support Agency (CSA) designated by the county board under Wis. Stat. § 59.53(5), and the Dane County Clerk of Courts and Family Court Commissioners (Cooperative Agency).
>
> This agreement is required by the State/Agency Contract for Child Support and is intended to provide support for the Child Support Agency in carrying out the functions of the IV-D program under Wis. Stats. §§ 49.22 and 59.53(5) and section 454(33) of the Federal Social Security Act related to establishing paternity, establishing and enforcing support obligations, collecting, and distributing support payments, establishing, and enforcing medical support obligations, locating absent parents, and reporting. State and federal reimbursement of allowable administrative costs incurred by the Cooperative Agency is provided through this agreement.

135. The status of the defendants in terms of the contract has not been disclosed by the defendants to the Plaintiff in the Family court case, even after repeated noticed and demand.

136. As a direct result of the Title IV-D contract, judicial immunity does not apply to independent contractors.

**ATTACHMENT 4: COOPERATIVE AGENCY BUDGET WORKSHEET - FAMILY COURT COMMISSIONER**

| NAME OR DESCRIPTION | POSITION/LOCATION | IV-D ALLOWABLE COSTS | FULL-TIME EQUIVALENT |
|---|---|---|---|
| COUNTY: | DANE | | |
| YEAR: | 2022 | | |
| SALARY & FRINGE: | | | |
| Brian Asmus | Court Commissioner | $ 118,585.70 | 0.61 |
| Karla Davenport Cattenach | Court Commissioner | $ 61,050.50 | 0.72 |
| Nifty Dio | Clerk III | $ 87,812.79 | 0.93 |
| Carlo Esqueda | Clerk of Court | $ 8,079.61 | 0.05 |
| Daniel Floeter | Court Commissioner | $ 183,430.22 | 0.76 |
| Mark Fremgen | Court Commissioner | $ 136,995.50 | 0.69 |
| Jason Hanson | Court Commissioner | $ 125,870.76 | 0.58 |
| Elizabeth Herrem | Paralegal I | $ 97,227.15 | 0.93 |

137.

**ATTACHMENT 5: CHILD SUPPORT AGENCY BUDGET WORKSHEET**

| NAME OR DESCRIPTION | POSITION/LOCATION | ANNUAL SALARY-FRINGES | FULL-TIME EQUIVALENT |
|---|---|---|---|
| COUNTY: | DANE | | |
| YEAR: | 2022 | | |
| SALARY AND FRINGE: | | | |
| ALTSCHULER, CLARE | ASSISTANT CORPORATION COUNSEL | $ 223,833.19 | 1.00 |
| AMORIELLO, DAWN | CLERK I-II | $ 81,189.50 | 1.00 |
| BALTUS, BRITTANY | LEAD CHILD SUPPORT INVESTIGATOR | $ 108,127.11 | 1.00 |
| BANUELOS, IRMA | CLERK III | $ 103,937.52 | 1.00 |
| BINA, LISA | CHILD SUPPORT OPERATIONS DIRECTOR | $ 135,424.33 | 1.00 |
| BIRONG, GUNDULA | CLERK III | $ 84,298.99 | 1.00 |
| BRENDEMUEHL, ANDREA | ASSISTANT CORPORATION COUNSEL | $ 205,419.43 | 1.00 |
| CHAIREZ, CRISCILDA | CHILD SUPPORT INVESTIGATOR | $ 109,528.18 | 1.00 |
| COPLIEN, TRACY | CHILD SUPPORT INVESTIGATOR - BILINGUAL | $ 108,920.12 | 1.00 |
| COVARRUBIAS, PRISCILLA | CHILD SUPPORT INVESTIGATOR | $ 104,509.48 | 1.00 |
| CULVER, BRETT | CHILD SUPPORT INVESTIGATOR | $ 109,659.86 | 1.00 |
| DRUMMOND, SCOTT | ASSISTANT CORPORATION COUNSEL | $ 160,621.26 | 1.00 |
| DYRESON, JACEY | CHILD SUPPORT INVESTIGATOR | $ 106,641.34 | 1.00 |
| EVANS, MARSHA | CLERK III | $ 95,533.79 | 1.00 |
| FENTY, JESSICA | CHLD SUPPORT INVESTIGATOR | $ 106,255.20 | 1.00 |
| FERGUSON, LYNDA | CLERK III | $ 105,368.60 | 1.00 |
| GOMEZ, GARY | ASSISTANT CORPORATION COUNSEL | $ 173,780.58 | 1.00 |
| GROSSMAN, ROSS | CLERK III | $ 94,349.09 | 1.00 |
| HAACK, NANCY | ADMINISTRATIVE SERVICES SUPERVISOR | $ 125,390.92 | 1.00 |
| HELLERUD, JESSE | CHILD SUPPORT INVESTIGATOR | $ 81,352.56 | 1.00 |
| JACOBS, JANE | ASSISTANT CORPORATION COUNSEL | $ 156,046.30 | 1.00 |
| KLETSCH, DOROTHY | CHILD SUPPORT INVESTIGATOR | $ 112,278.48 | 1.00 |

## SUMMARY

138. On or around October 2022 and beyond Plaintiff income has continuously been garnished an estimated total amount of $3,000 by the defendants.

139. As a direct result of the garnishment and the defendants not taking action to Plaintiff affidavits.

140. Plaintiff has suffered damages in the amount of $30,000 which has caused Plaintiff financial injury and loss of income which caused Plaintiff mental anguish, sleepless nights, emotional and traumatic stress, nutritional and physical health disturbances, and Plaintiff children separation anxiety and violation of Plaintiff's constitutional rights.

141. Subsequently caused Plaintiff family stress including parents and children.

142. Plaintiff has been unable to meet and afford basic living expenses such as food, housing, clothing and the well being over Plaintiff children as a result of the defendant(s).

143. On or around October 2022 to present Plaintiff pay check has continuously been garnished an average of $476 dollars a month by the defendants.

144. As a direct result of the garnishment by the defendants this has caused Plaintiff damages as she is struggling to live and afford basic living essentials for herself and deprivation of her constitutional rights.

145. During the months of July 2022 through January 2023 Plaintiff has submitted to court and sent the defendants an estimated average of 15-20 affidavits.

146. The defendants have failed to acknowledge and respond to Plaintiff affidavits.

147. Within each of Plaintiff affidavits contained important information outlining her income, finances, status, position, nature of action and welfare.

148. As a result of defendants failing to acknowledge or respond and no action was taken to Plaintiff noticed and affidavits;

149. The case is still ongoing, discovery is incomplete, and no trial by jury has been scheduled in accordance with Turner supra as requested by law.

150. Plaintiff has suffered economic and general damages in the amount of $100,000 dollars.

**CONCLUSION**

151. By virtue of the foregoing, defendants deprived Plaintiff of clearly established rights protected by the inherent rights clauses of the First, Fourth, and Fifth and Fourteenth Amendments, including but not limited: the right to personal security; the right to protection from harm, abusive process and abusive power; the right to be protected from malicious prosecution, the right not to be harmed physically, emotionally, or otherwise; the right to basic life necessities and services consistent with the exercise of reasonable judgment from STATE personnel and employees.

152. Plaintiff's substantive due process rights were clearly established constitutional rights at the time of the Defendants' acts and conduct, and a reasonable individual would have known that their acts and conduct would violate these clearly established constitutional rights.

153. As direct and proximate conduct and acts, individual Defendants caused emotional, physical, psychological and harmful economic consequences and upon information and belief of Plaintiff, these conduct and acts will continue to date and into the future.

154. The actions of all individual Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson were performed, under the color of state law, within the scope of their employment, duties under an independent contract.

155. Plaintiff did not receive a response from within the time frame demanded therein her CEASE AND DESIST.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

156. Plaintiff has timely filed this action and has complied with all administrative prerequisites before bringing this lawsuit.

**FIRST COUNT**
**Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible for Deprivation of 1st Amendment Rights**

157. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 156, above, as if fully set forth herein.

158. The 1st Amendment provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

159. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conspired with to abridge Plaintiff's rights to freedom of speech, and petition the Court regarding the alleged debts, by enforcing an alleged Company Requirement.

160. Management level employees knew or should have known, of the Company Requirement and the abridgment upon Plaintiff's rights in relation thereto.

161. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson did not exercise reasonable care to prevent an abridgment of Plaintiff's rights to freedom of speech and petition the Court and did not exercise reasonable care to rescind the Company Requirement, even after Plaintiff's repeated opposition to it.

162. As a direct, legal, and proximate result of this abridgment of 1st Amendment rights, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

163. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from an abridgment of 1st Amendment rights.

164. Plaintiff is entitled to all relief mentioned above and not limited to her reasonable litigation fees and costs of suit.

## SECOND COUNT
**Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible for Deprivation of 4th Amendment Rights**

165. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 164, above, as if fully set forth herein.

166. The 4th Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

167. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conspired with to seize Plaintiff's papers without a warrant supported by proper judicial affirmation, by enforcing an alleged Company Requirement.

168. Management level employees knew or should have known, of the Company Requirement and the abridgment upon Plaintiff's rights in relation thereto.

169. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson did not exercise reasonable care to prevent seizing Plaintiff's papers without a warrant supported by proper judicial affirmation and did not exercise reasonable care to rescind the Company Requirement, even after Plaintiff's repeated opposition to it.

170. As a direct, legal, and proximate result of this abridgment of 4th Amendment rights, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

171. Defendants, Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from an abridgment of 4th Amendment rights.

172. Plaintiff is entitled to all relief mentioned above and not limited to her reasonable litigation fees and costs of suit.

### THIRD COUNT
**Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible for Deprivation of 5th and 14th Amendment Rights**

173. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 172, above, as if fully set forth herein.

The 5th Amendment provides, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against herself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

174. The 14th Amendment provides, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

175. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conspired with to deprive Plaintiff of life, liberty, and property, without due process of law and equal protection of the laws, by enforcing an alleged Company Requirement.

176. Management level employees knew or should have known, of the Company Requirement and the abridgment upon Plaintiff's rights in relation thereto.

177. Defendants, Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson did not exercise reasonable care to prevent depriving Plaintiff of life, liberty, and property, without due process of law and equal protection of the laws, and did not exercise reasonable care to rescind the Company Requirement, even after Plaintiff's repeated opposition to it.

178. As a direct, legal, and proximate result of this abridgment of 5th and 14th Amendment rights, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

179. Defendants, Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from an abridgment of 5th and 14th Amendment rights.

180. Plaintiff is entitled to all relief mentioned herein.

### FOURTH COUNT
**Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible for Deprivation of 6th and 7th Amendment Rights**

181. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 180, above, as if fully set forth herein.

182. The 6th Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against her; to have compulsory process for obtaining witnesses in her favor, and to have the assistance of counsel for her defense."

183. The 7th Amendment provides, "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law."

184. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conspired with to deprive Plaintiff of her right to a trial by jury by enforcing an alleged Company Requirement.

185. Management level employees knew or should have known, of the Company Requirement and the abridgment upon Plaintiff's rights in relation thereto.

186. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson did not exercise reasonable care to prevent deprivation of Plaintiff's right to a trial by jury and did not exercise reasonable care to rescind the Company Requirement, even after Plaintiff's repeated opposition to it.

187. As a direct, legal, and proximate result of this abridgment of 6th and 7th Amendment rights, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

188. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from an abridgment of 6th and 7th Amendment rights.

189. Plaintiff is entitled to all relief mentioned above and not limited to her reasonable litigation fees and costs of suit.

### FIFTH COUNT
### Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible for Deprivation of 8th Amendment Rights

190. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 189, above, as if fully set forth herein.

191. The 8th Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

192. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conspired with to subject Plaintiff to excessive fines, by enforcing an alleged Company Requirement.

193. Management level employees knew or should have known, of the Company Requirement and the abridgment upon Plaintiff's rights in relation thereto.

194. Defendants, Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson did not exercise reasonable care to prevent subjecting Plaintiff to excessive fines and did not exercise reasonable care to rescind the Company Requirement, even after Plaintiff's repeated opposition to it.

195. As a direct, legal, and proximate result of this abridgment of 8th Amendment rights, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

196. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from an abridgment of 8th Amendment rights.

197. Plaintiff is entitled to all relief mentioned above and not limited to her reasonable litigation fees and costs of suit.

## SIXTH COUNT
**Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible for Proceeding with Fraudulent Statements Under 15 U.S.C. § 645**

198. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 197, above, as if fully set forth herein.

199. 15 U.S.C. §645 provides, "Whoever makes any statement knowing it to be false, or whoever willfully overvalues any security, for the purpose of obtaining for herself or for any applicant any loan, or extension thereof by renewal, deferment of action, or otherwise, or the acceptance, release, or substitution of security therefor, or for the purpose of influencing in any way the action of the Administration, or for the purpose of obtaining money, property, or anything of value, under this chapter, shall be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both."

200. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conspired with to subject Plaintiff to false statements made against her for the purpose of obtaining money, property, or anything of value, by enforcing an alleged Company Requirement.

201. Management level employees knew, or should have known, of the Company Requirement and the abridgment upon Plaintiff's rights in relation thereto.

202. Defendants did not exercise reasonable care to prevent subjecting Plaintiff to false statements made against her and did not exercise reasonable care to rescind the Company Requirement, even after Plaintiff's repeated opposition to it.

203. As a direct, legal, and proximate result of this abridgment of Plaintiff's right to be free from false statements made against her, she has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

204. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from false statements made against her for the purpose of obtaining money and/or property.

205. Plaintiff is entitled to all relief mentioned above and not limited to her reasonable litigation fees and costs of suit.

### SEVENTH COUNT
**Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible for Conspiracy Against Rights Under 18 U.S.C. § 241**

206. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 205 above, as if fully set forth herein.

207. 18 U.S.C. § 241 provides, "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to her by the Constitution or laws of the United States, or because of her having so exercised the same; or … If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder her free exercise or enjoyment of any right or privilege so secured- … They shall be fined under this title or imprisoned not more than ten years, or

both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death."

208. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conspired to injure Plaintiff's right to free exercise and enjoyment of liberties afforded to her under the Constitution, by enforcing an alleged Company Requirement and Policy.

209. Management level employees knew or should have known, of the Company Requirement and Policy, and the abridgment upon Plaintiff's rights in relation thereto.

210. Defendants did not exercise reasonable care to prevent an injury of Plaintiff's right to free exercise and enjoyment of liberties afforded to her under the Constitution and did not exercise reasonable care to rescind the Company Requirement or Policy, even after Plaintiff's repeated opposition to it.

211. As a direct, legal, and proximate result of this injury of Plaintiff's right to free exercise and enjoyment of liberties afforded to her under the Constitution, she has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

212. Defendants unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to free exercise and enjoyment of liberties afforded to her under the Constitution.

213. The full extent of the damages caused by Conspirator Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilsonattack and other misconduct as described herein is only known to Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and

Wilson at this time. Discovery will uncover the full scope and extent of the misconduct and harm.

214. In addition, on information and belief, discovery will identify additional co-conspirators and may well lead to evidence that all of the Conspirator Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson were involved in all aspects of the conspiracy.

215. Plaintiff is entitled to all relief mentioned above and not limited to her reasonable litigation fees and costs of suit.

## EIGHTH COUNT
### Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible for Deprivation of Rights Under Color of Law Under 18 U.S.C. § 242

216. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 215, above, as if fully set forth herein.

217. 18 U.S.C. § 242 provides, "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of her color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an

attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death."

218. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conspired to subject Plaintiff to a deprivation of rights, and privileges protected and secured by the Constitution, by enforcing an alleged Company Requirement and Policy.

219. Management level employees knew or should have known, of the Company Requirement and Policy, and the abridgment upon Plaintiff's rights in relation thereto.

220. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson did not exercise reasonable care to prevent subjecting Plaintiff to a deprivation of rights, and privileges protected and secured by the Constitution, and did not exercise reasonable care to rescind the Company Requirement or Policy, even after Plaintiff's repeated opposition to it.

221. As a direct, legal, and proximate result of subjecting Plaintiff to a deprivation of rights, and privileges protected and secured by the Constitution, he has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

222. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to free exercise and enjoyment of rights, and privileges protected and secured by the Constitution.

223. Plaintiff is entitled to all relief mentioned above and not limited to her reasonable litigation fees and costs of suit.

## NINTH COUNT
### Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible for Deprivation of Federally Protected Activities Under 18 U.S.C. §245

224. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 223, above, as if fully set forth herein.

225. 18 U.S.C. § 245 provides, "(b) Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with- … (B) participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; … or participating lawfully in speech or peaceful assembly opposing any denial of the opportunity to so participate- … shall be fined under this title, or imprisoned not more than one year, or both …"

226. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conspired to injure Plaintiff's right to participate in and enjoy privileges provided by the United States, by enforcing an alleged Company Requirement and Policy.

227. Management level employees knew or should have known, of the Company Requirement and Policy, and the abridgment upon Plaintiff's rights in relation thereto.

228. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson did not exercise reasonable care to prevent injuring Plaintiff's right to participate in and enjoy privileges provided by the United States and did not exercise reasonable care to rescind the Company Requirement or Policy, even after Plaintiff's repeated opposition to it.

229. As a direct, legal, and proximate result of injuring Plaintiff's right to participate in and enjoy privileges provided by the United States, he has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

230. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to participate in and enjoy privileges provided by the United States.

231. Plaintiff is entitled to all relief mentioned above and not limited to her reasonable litigation fees and costs of suit.

### TENTH COUNT
**Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible for Violation of Garnishment Law Under 31 U.S.C. § 3720D**

232. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 231, above, as if fully set forth herein.

233. 31 U.S.C. §3720D provides, "(b) In carrying out any garnishment of disposable pay of an individual under subsection (a), the head of an executive, judicial, or legislative agency shall comply with the following requirements: (1) The amount deducted under this section for any pay period may not exceed 15 percent of disposable pay, except that a greater percentage may be deducted with the written consent of the individual. (2) The individual shall be provided written notice, sent by mail to the individual's last known address, a minimum of 30 days prior to the initiation of proceedings, from the head of the executive, judicial, or legislative agency, informing the individual of— ... (A) the nature and amount of the debt to be collected; (B) the intention of the agency to initiate proceedings to collect the debt through deductions from pay; and (C) an explanation of the rights of the individual under this section. ... (3) The individual shall be provided an opportunity to inspect and copy records relating to the debt. ... (4) The individual shall be

provided an opportunity to enter into a written agreement with the executive, judicial, or legislative agency, under terms agreeable to the head of the agency, to establish a schedule for repayment of the debt. … (5) The individual shall be provided an opportunity for a hearing in accordance with subsection (c) on the determination of the head of the executive, judicial, or legislative agency concerning— (A) the existence or the amount of the debt, and (B) in the case of an individual whose repayment schedule is established other than by a written agreement pursuant to paragraph (4), the terms of the repayment schedule. … (6) If the individual has been reemployed within 12 months after having been involuntarily separated from employment, no amount may be deducted from the disposable pay of the individual until the individual has been reemployed continuously for at least 12 months. … (e) … (1) An employer may not discharge from employment, refuse to employ, or take disciplinary action against an individual subject to wage withholding in accordance with this section by reason of the fact that the individual's wages have been subject to garnishment under this section, and such individual may sue in a State or Federal court of competent jurisdiction any employer who takes such action."

234. Defendant Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conspired to injure Plaintiff's rights to: enter into an agreement regarding the debts; inspect the validity of the documents relating to the debts; request a hearing regarding the debts; be continuously employed for at least twelve [12] consecutive months before deducting her disposable pay; and avoid termination of employment, by enforcing an alleged Company Requirement.

235. Management level employees knew or should have known, of the Company Requirement, and the abridgment upon Plaintiff's rights in relation thereto.

236. Defendant Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson did not exercise reasonable care to prevent injuring Plaintiff's rights to: enter into an agreement regarding the debts; inspect the validity of the documents relating to the debts; request a hearing regarding the debts; be continuously employed for at least twelve [12] consecutive months before deducting her disposable pay; and avoid termination of employment, and did not exercise reasonable care to rescind the Company Requirement, even after Plaintiff's repeated opposition to it.

237. As a direct, legal, and proximate result of injuring Plaintiff's rights to: enter into an agreement regarding the debts; inspect the validity of the documents relating to the debts; request a hearing regarding the debts; be continuously employed for at least twelve [12] consecutive months before deducting her disposable pay; and avoid termination of employment, he has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

238. Defendant Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's rights to: enter into an agreement regarding the debts; inspect the validity of the documents relating to the debts; request a hearing regarding the debts; be continuously employed for at least twelve [12] consecutive months before deducting her disposable pay; and avoid termination of employment.

239. Plaintiff is entitled to all relief mentioned above and not limited to her reasonable litigation fees and costs of suit.

## ELEVENTH COUNT
### Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible for Deprivation of Civil Rights Under 42 U.S.C. § 1983

240. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 239, above, as if fully set forth herein.

241. 42 U.S.C. §1983 provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

242. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conspired to subject Plaintiff to a deprivation of rights and privileges secured under the Constitution, by enforcing an alleged Company Requirement and Policy.

243. Management level employees knew or should have known, of the Company Requirement and Policy, and the abridgment upon Plaintiff's rights in relation thereto.

244. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilsondid not exercise reasonable care to prevent subjecting Plaintiff to a deprivation of rights and

privileges secured under the Constitution and did not exercise reasonable care to rescind

the Company Requirement and Policy, even after Plaintiff's repeated opposition to it.

245. As a direct, legal, and proximate result of subjecting Plaintiff to a deprivation of rights

and privileges secured under the Constitution, he has sustained economic and emotional

injuries, resulting in damages in an amount to be proven at trial.

246. Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson unlawful

actions were intentional, willful, malicious, and/or done with reckless disregard to

Plaintiff's right to enjoy privileges and immunities secured under the Constitution.

247. Plaintiff is entitled to all relief mentioned above and not limited to her reasonable

litigation fees and costs of suit.

### TWELFTH COUNT
### Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible Abuse of Process

248. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 247,

above, as if fully set forth herein.

249. As described above Frost and Hanson working through and with Haack and Bina have

lodged false criminal complaints, encouraged and supported arrest and criminal

investigation and prosecution of the Plaintiff.

250. In addition, Frost, Hanson, Wilson, Cooke working through and with Haack, Jacobs, Bina

Chairez have threatened additional criminal action and to pursue civil remedies in court

against Plaintiff and uninvolved outside entities based on false claims of misconduct.

251. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson have taken and continue

to take these actions even though the events underlying the existing Family proceeding

are not criminal proceedings and the threatened additional criminal and civil proceedings outside of the United States.

252. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson have taken and continued to take these actions even though the Plaintiff has not consented and stipulated to proceed within this jurisdiction on the claims related to the events underlying the existing criminal proceeding and the threatened criminal and civil proceedings.

253. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson are using Company requirement to proceed in Tribunal criminal or further criminal and civil proceedings as a form of extortion designed to coerce, pressure, and harm Plaintiff to obtain a collateral advantage in this action as well as malicious prosecution.

254. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson goal is to force Plaintiff to drop her claims while inflicting as much harm as possible on Plaintiff reputation, finances and job opportunities.

255. Management level employees knew or should have known, of the Company Requirement and Policy, and the abridgment upon Plaintiff's rights in relation thereto.

256. Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson conduct is willful, intentional, and based on knowingly false allegation, including without limitation, allegations that any employee was involved in the events at issue.

257. Plaintiff has been damaged by Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson abuse of process, including without limitation, damage including economic and emotional damages to Plaintiff.

258. Plaintiff is entitled to all relief mentioned above and not limited to her reasonable litigation fees and costs of suit.

## THIRTEENTH COUNT
### Defendants Frost, Hanson, Wilson, Haack, Bina, Jacobs, Cooke, Chairez were responsible Pursuant to §1983 (Malicious Prosecution)

259. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 258, above, as if fully set forth herein.

260. The defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson with malicious intent, prosecuted Plaintiff and initiated a criminal proceeding despite no evidence that Plaintiff had committed no crime.

261. That there was no probable cause for the criminal contempt proceeding.

262. That by reason of defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson acts and omissions, defendants, acting under color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff rights, deprived Plaintiff of her liberty when they maliciously prosecuted her and subject her to a company requirement, in violation of her rights pursuant to the Fourth and Fourteenth Amendment of the United States constitution.

263. Upon information and belief, Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson are independent contractors for a company. Thus, as a result of the above company requirement, Plaintiff was maliciously prosecuted despite the fact that he had committed no violation of the law.

264. That the above described company requirement demonstrates a deliberate indifference in part of the defendants to the constitution rights of the Plaintiff and were the cause of the violations of Plaintiff rights alleged herein.

265. That in so acting, Defendants Hanson, Frost, Haack, Bina, Jacobs, Cooke, Chairez, and Wilson abused their power and authority under the color of State Law.

266. That by reason of the foregoing, Plaintiff suffered emotional and psychological injuries, traumatic stress, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation and indignity. All of the said injuries may be permanent.

267. **Reserve the right to amend.**

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief individually, jointly and severally as against all Defendants:

a) Award compensatory and general damages in an amount of 20 million dollars but not limited to any emotional distress, and any other compensatory damages as permitted by law and according to proof at trial;

b) Award punitive or exemplary damages where alleged against Defendants, in an amount of no less than 20 million dollars and/or an amount greater than to be determined at trial;

c) Award court fees and attorneys' fees  pursuant to 42 U.S.C. §1988;

d) Award costs of suit incurred herein pursuant to 42 U.S.C. §1920 and 1988; and,

e) Award such other and further relief as the Court deems just and proper.


Dated: 1/26/23

*In witness where of:*

By: _____
Plaintiff in Pro Per

*DENISE DEDERICH*
*NOTARY PUBLIC*
*STATE OF WISCONSIN*

48

*Commission expires Nov. 30, 2025*